IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                                :
MICHAEL R. D'ALESSANDRO,        :      HONORABLE JEROME B. SIMANDLE
                                :
                                :      CIVIL NO. 05-5051 (JBS)
            Plaintiff,          :
                                :
    v.                          :
                                :      OPINION
                                :
BUGLER TOBACCO CO., et al.,     :
                                :
            Defendants.         :
_____:
```

APPEARANCES:

Mr. Michael D'Alessandro
#202420
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302
     Plaintiff pro se

Anne Murray Patterson, Esq.
RIKER, DANZIG, SCHERER, HYLAND & PERRETTI, ESQS.
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, NJ 07962-1981
     Attorney for Defendant Bugler Tobacco Co. a/k/a Lane Limited

John C. Barnoski, Esq.
COZEN & O'CONNOR, ESQS.
1900 Market Street
Philadelphia, PA 19103
     Attorney for Defendant John Middleton, Inc.

Sarah Brie Campbell, Esq.
OFFICE OF THE NJ ATTORNEY GENERAL
DEPARTMENT OF LAW & PUBLIC SAFETY
RJ Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
     Attorney for Defendant Kathryn E. MacFarland

David J. Bishop, Esq.
CRAMMER, BISHOP, MARCZYK & O'BRIEN, PC
508 New Jersey Avenue
Suite B3
Absecon, NJ 08201
     Attorney for Defendants Correctional Medical Services,
     Stephen E. Hoey, and Colleen Mayo

**Simandle, District Judge:**

**I.   INTRODUCTION**

     Currently pending before the Court are a motion to dismiss by Defendant Bugler Tobacco [Docket Item 54] and a motion to dismiss and/or for summary judgment by Defendant Kathryn MacFarland [Docket Item 53], who is the Administrator of South Woods State Prison within the New Jersey Department of Corrections.[1]  For the reasons stated in this Opinion, the Court shall grant these motions and dismiss these defendants from this action.

**II.   BACKGROUND**[2]

     Plaintiff Michael D'Alessandro ("Plaintiff") is an inmate who has been incarcerated at South Woods State Prison ("South Woods") in Bridgeton, New Jersey since December 11, 2000.  His complaints relate to his exposure to environmental tobacco smoke

─────────────────

     [1]  Plaintiff has also filed a motion for extension of time [Docket Item 68] to oppose Defendant Bugler's Motion to Dismiss, which the Court shall grant, so that it may consider that opposition [Docket Item 75] in deciding the motion.

     [2]  The facts set forth here are those alleged in the Complaint.

at South Woods, as described below.[3]

Plaintiff filed this action on October 18, 2005.  Defendant Bugler's loose tobacco is sold at the prison and Plaintiff alleges, among other things, that Defendants Bugler Tobacco Company ("Bugler" or "Bugler Tobacco") and South Woods' Administrator, Kathryn MacFarland, are liable for the harms Plaintiff suffered from exposure to second-hand smoke[4] he unwillingly inhales at the prison.

## III. DEFENDANT BUGLER'S MOTION TO DISMISS

### A.    Rule 12(b)(6) Standard

Defendant Bugler moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief may be granted.  For purposes of this dismissal motion, pursuant to Rule 12(b)(6), the Court deems the facts alleged in the Complaint as true and determines whether there could be any legal basis for relief.  The Court shall view all allegations in the Complaint in the light most favorable to the plaintiff, see

---

[3]  Because Plaintiff concedes on this motion that he has no claim for the prison's alleged failures to provide heat (Pl. Br. Opp. State's Mot. at 8) or hot water (Id. at 14), there is no need to discuss the facts relevant to these claims, which were asserted in the Complaint.  The Court shall grant summary judgment on these claims as unopposed.

[4]  The Court shall use the terms "second-hand smoke" and "environmental tobacco smoke" (or "ETS") interchangeably to refer to the emissions from a burning tobacco product that a person inhales when breathing in proximity to someone who is smoking tobacco.

3

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994), and shall deny the motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Scheuer, 416 U.S. at 236.  The Court must accept any and all reasonable inferences derived from the facts stated in the Complaint, Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991) and decide not whether Plaintiff will ultimately prevail, but, rather whether he can prove any set of facts in support of his claims that would entitle him to relief, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### B.   Plaintiff's Allegations Against Bugler

Plaintiff alleges that since December 11, 2000 he has been confined in cells at South Woods with smokers who are addicted to Bugler Tobacco's products.[5]  Plaintiff claims that these products, which are sold at the prison's commissary, contain no warnings of the dangers that second-hand smoke causes. Inhalation of this smoke, he claims, has aggravated his existing cardiac condition, caused him shortness of breath and other breathing problems, and threatens his future health. (Compl. at 4.)  Plaintiff is a non-smoker and since December 2000 he has

---

[5]  Plaintiff also alleges that he is exposed to the smoke in other areas of the prison, including in indoor and outdoor recreation areas.

requested that prison officials house him with only fellow non-
smokers. (Compl. at ¶ 12.)

In November 2004 Plaintiff became concerned about his
breathing problems and requested "lung x-rays." (Compl. at ¶
14.) In December 2004, prison medical staff advised Plaintiff
that his x-rays indicated he suffers from Chronic Obstructive
Pulmonary Disease ("COPD"). (Compl. at ¶ 15.)

In March 2005 Plaintiff was diagnosed with "obstructive
ventilatory (lung) defect and prescribed two different Oral
Inhalers of broncodilator medications to be taken several times
daily." (Compl. at 2); (Compl. at ¶ 16). He continued to be
treated for this condition with inhalers until September 2005
when he was having increased pain and attacks and requested
another x-ray and a medical order prohibiting confinement with
smokers. (Compl. at ¶ 22.) Prison officials denied these
requests. (Id.)

Plaintiff claims that Bugler's failure to label its smoking
tobacco and rolling papers with warnings about the risks
associated with ETS caused him permanent injury to his lungs,
aggravation of his existing cardiac condition, and future
unnecessary physical injury and mental anguish. (Compl. at ¶
30.) Plaintiff seeks compensatory and punitive damages as well
as attorney's fees and costs and any additional relief the Court
may deem appropriate.

Although Plaintiff explicitly relies on 42 U.S.C. § 1983 as the basis for his claims, the Court shall liberally construe the Complaint as alleging, additionally, a New Jersey products liability claim against Bugler for failure to warn.[6]  See Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999) ("Because Holley is pursuing her action pro se, we have an obligation to read her pleadings liberally.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  We apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.  See Small v. Lehman, 98 F.3d 762, 766 (3d Cir. 1996); Lewis v. Att'y Gen'l of United States, 878 F.2d 714, 722 n.20 (3d Cir. 1989).").  See also (Bugler Br. at 12) ("There is no question that Plaintiff predicates his theory of liability upon [Bugler's] alleged duty to warn consumers of its tobacco products concerning the alleged dangers of environmental tobacco smoke."); N.J. Stat. Ann. § 2A:58C-2 ("A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it:. . . b. failed to contain adequate warnings or instructions. . . ").

---

[6]  See D'Alessandro v. Bugler Tobacco Co., No. 05-5051, 2006 U.S. Dist. LEXIS 89761, at *4 (D.N.J. Dec. 7, 2006) (construing Plaintiff's claims against JMI to include failure to warn claim).

**C.   Whether Complaint States a Claim Against Bugler**[7]

Bugler argues that Plaintiff's failure to warn claim must fail because (1) the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U.S.C. §§ 1331-41, preempts such state claims; (2) New Jersey's two-year statute of limitations bars Plaintiff's action; and (3) Plaintiff has not alleged any act or omission by Bugler that was the proximate cause of his injuries.  Although the Court finds that there is no preemption, dismissal is appropriate because the claims against Bugler are time-barred.

1.   <u>Whether the FCLAA Preempts Failure to Warn Claims Against Manufacturers of Loose Tobacco</u>

Bugler's tobacco products at issue in this case are loose tobacco and tobacco rolling papers.  While the FCLAA mandates warning labels on cigarettes[8], there is no federal mandate for

---

[7]   Bugler argues that any claims in the Complaint against it for violations of 42 U.S.C. § 1983 and the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U.S.C. §§ 1331-41, must fail as a matter of law.  The Court agrees.  The § 1983 claims fail because Bugler is not a state actor. <u>See</u> (Pl.'s Opp. to Bugler Mot. at 7) (conceding that 42 U.S.C. § 1983 does not apply).  As to the FCLAA, the Court does not construe the Complaint as containing such claims, but even if it did, as the Court previously explained when it denied Plaintiff's motion to amend the Complaint to add FCLAA claims against another defendant, that statute provides for no private right of action. <u>D'Alessandro</u>, 2006 U.S. Dist. LEXIS 89761, at *2 n.1.

[8]   The term "cigarettes" means "(A) any roll of tobacco wrapped in paper or in any substance not containing tobacco, and (B) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette . . . ." 15 U.S.C. § 1332. "This definition makes clear that the statute's

labeling loose tobacco and rolling papers.  Nevertheless,
Defendant Bugler argues that the FCLAA explicitly preempts any
state law claims against it for its failure to label those
products, even when the plaintiff was allegedly injured from
second-hand smoke. (See, e.g., Bugler. Reply Br. at 3-6).  This
argument defies not only the plain language of the statute, but
also simple logic.

Bugler relies heavily on the Supreme Court's plurality
opinion interpreting the FCLAA, Cipollone v. Liggett Group, 505
U.S. 504 (1992).  In that case, Plaintiffs alleged several New
Jersey tort claims related to their smoking of cigarettes,
including a two-pronged failure to warn claim: "that the product
was 'defective as a result of [respondents'] failure to provide
adequate warnings of the health consequences of cigarette
smoking' (Count 3, App. 85) and that respondents 'were negligent
in the manner [that] they tested, researched, sold, promoted and
advertised' their cigarettes (Count 4, App. 86)."  Id. at 509.
That Court held that claims of failure to warn by smokers of
cigarettes are within the FCLAA's express preemption provision.
Id. at 524-25 ("[I]nsofar as claims under either failure-to-warn
theory require a showing that respondents' post-1969 advertising

labeling requirement does not apply to loose tobacco products
such as Bugler.  Bugler products in fact do not contain the
warning on their labels."  Wilson v. Brown & Williamson Tobacco
Corp., 968 F. Supp. 296, 298 (S.D.W. Va. 1997).

or promotions should have included additional, or more clearly
stated, warnings, those claims are pre-empted.  The Act does not,
however, pre-empt petitioner's claims that rely solely on
respondents' testing or research practices or other actions
unrelated to advertising or promotion.").  See also Brown v.
Philip Morris Inc., 250 F.3d 789, 796 (3d Cir. 2001) (discussing
Cipollone).

The question here is whether Plaintiff's claims of injury
from inhaling second-hand smoke not from cigarettes but from
loose tobacco products, which need not be labeled under the Act,
are also preempted.  Thus, in two key respects this case differs
from Cipollone: (1) the plaintiff is not a smoker and (2) because
the product at issue is loose tobacco and not cigarettes, the
product's label is not regulated by the FCLAA.  Nevertheless,
Bugler argues that Cipollone strengthens its claim that Congress
intended to outlaw all tort actions against tobacco
manufacturers.  The Court disagrees.

In analyzing whether the FCLAA expressly preempted
Plaintiff's claimed harms from smoking cigarettes, the Supreme
Court explained the process this Court must initially undertake
when deciding whether the FCLAA preempts other actions.  The
Supreme Court indicated that express preemption of one type of
claim weighs against preemption of unmentioned claims:

> When Congress has considered the issue of
> pre-emption and has included in the enacted

> legislation a provision explicitly addressing
> that issue, and when that provision provides
> a "reliable indicium of congressional intent
> with respect to state authority," <u>Malone v.
> White Motor Corp.</u>, 435 U.S. at 505, "there is
> no need to infer congressional intent to
> pre-empt state laws from the substantive
> provisions" of the legislation. <u>California
> Federal Savings & Loan Assn. v. Guerra</u>, 479
> U.S. 272, 282 (1987) (opinion of Marshall,
> J.). Such reasoning is a variant of the
> familiar principle of *expressio unius est
> exclusio alterius*: Congress' enactment of a
> provision defining the pre-emptive reach of a
> statute implies that matters beyond that
> reach are not pre-empted. In this case, the
> other provisions of the [FCLAA] offer no
> cause to look beyond [the preemption
> provision] of [the] Act. Therefore, we need
> only identify the domain expressly pre-empted
> by each of those sections.

<u>Cipollone</u>, 505 U.S. at 517.  <u>But</u> <u>see</u> <u>Freightliner Corp. v.

Myrick</u>, 514 U.S. 280, 288-89 (1995) ("The fact that an express

definition of the pre-emptive reach of a statute 'implies'. . .

that Congress did not intend to pre-empt other matters does not

mean that the express clause entirely forecloses any possibility

of implied pre-emption. . . .  At best, <u>Cipollone</u> supports an

inference that an express pre-emption clause forecloses implied

pre-emption; it does not establish a rule.").  Further,

"[c]onsideration of issues arising under the Supremacy Clause

'starts with the assumption that the historic police powers of

the States [are] not to be superseded by . . . Federal Act unless

that [is] the clear and manifest purpose of Congress.'"

<u>Cipollone</u>, 505 U.S. at 516 (quoting <u>Rice v. Santa Fe Elevator</u>

Corp., 331 U.S. 218, 230 (1947)).

The current version of the preemption provision expressly

preempts actions related to smoking cigarettes; it does not

mention loose tobacco or environmental tobacco smoke[9]:

> (a) **Additional statements.** No statement
> relating to smoking and health, other than
> the statement required by section 4 of this
> Act [15 U.S.C. § 1333], shall be required on
> any cigarette package.

> (b) **State regulations.** No requirement or
> prohibition based on smoking and health shall
> be imposed under State law with respect to
> the advertising or promotion of any
> cigarettes the packages of which are labeled
> in conformity with the provisions of this
> Act.

15 U.S.C. § 1334.  Another district court has explained that

there is no preemption for claims related to loose tobacco:

---

[9] The Court notes that the current labeling regime does not
include a warning about second-hand smoke amongst the mandated
rotating warnings with which cigarette manufacturers must label
their products, 15 U.S.C. § 1333(a), and different courts have
reached different determinations whether the preemption provision
includes claims by non-smokers exposed to environmental tobacco
smoke, compare Wolpin v. Philip Morris, 974 F. Supp. 1465 (S.D.
Fl. 1997) and Shaw v. Brown & Williamson Tobacco Corp., 973 F.
Supp. 539 (D. Md. 1997) (FCLAA does not preempt state claims of
harm from exposure to second-hand smoke) with Tormey v. The
American Tobacco Co., No. 05-0506, slip op., (N.Y. Sup. Ct. Sept.
20, 2006) (FCLAA preempts state claims of harm from exposure to
second-hand smoke).  This Court need not resolve that issue
because it is clear that the Act does not regulate nor,
therefore, preempt regulation of warnings on loose tobacco
products. See Toole v. Brown & Williamson Tobacco Corp., 980 F.
Supp. 419 (N.D. Ala. 1997); Wilson v. Brown & Williamson Tobacco
Corp., 968 F. Supp. 296 (S.D.W. Va. 1997).

> The preemption clause applies only to "cigarettes . . . labeled in conformity with the provisions" of the Act.  For purposes of the FCLAA, loose tobacco products are not cigarettes.  The Court cannot comprehend that, as [Bugler] appears to argue, Bugler tobacco products fall within the FCLAA's definition of cigarettes for purposes of preemption but not for purposes of labeling.  Such a reading of the Act ignores the *raison d'etre* of the statute.

Wilson v. Brown & Williamson Tobacco Corp., 968 F. Supp. 296, 299

(S.D.W. Va. 1997).[10]

---

[10]  Although ordinarily the Court would also be required to determine whether the statute implicitly preempts the state claims asserted here, Freightliner, 514 U.S. at 288-89, Bugler has not raised that argument.  Nevertheless, the Court finds no implied preemption.  Implied preemption exists if (1) the scope of the statute indicates that Congress intended federal law to occupy a field exclusively or (2) state law is in actual conflict with federal law.  Id. at 287.  The scope of the statute does not indicate that Congress intended to occupy the field of tobacco regulation exclusively; rather, the FCLAA labeling requirement refers only to cigarettes and not to other tobacco products, such as "little cigars".  See D'Alessandro, 2006 U.S. Dist. LEXIS 89761 at *2 n.1.  Furthermore, there is no actual conflict between state tort law and this federal law.  An actual conflict will exist when it is impossible for a private party to comply with both state and federal requirements or when "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).  If Plaintiff succeeds on his failure to warn claim, then this Court would have found that New Jersey law requires warnings that the federal statute does not mandate, but also does not prohibit.  Thus, the two regimes would be complementary.

The purpose of the Act is "to establish a comprehensive Federal program to deal with **cigarette labeling ...**" so that "the public may be adequately informed about any adverse health effects of **cigarette smoking by inclusion of warning notices on each package of cigarettes...** commerce and the national economy may be ... protected to the maximum extent consistent with this declared policy and ... **not impeded by diverse, nonuniform, and**

This Court finds that the FCLAA does not preempt Plaintiff's New Jersey failure to warn claims where he alleges that he was harmed by exposure to second-hand smoke from unlabeled loose tobacco, because the labeling and promotion of such tobacco products are not regulated by the FCLAA.

2.   Whether the Statute of Limitations Bars Plaintiff's Action

Plaintiff alleges that his exposure to ETS from Bugler products at South Woods began December 11, 2000.  He also alleges

---

confusing cigarette labeling and advertising regulations ... ." 15 U.S.C. § 1331 (emphases added).  Liability for failure to warn about other tobacco products, including Bugler's loose tobacco, does not disrupt the uniform regime the FCLAA established for cigarette labeling, nor does it otherwise "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Hines v. Davidowitz, 312 U.S. at 67. Therefore, there is no concern that the FCLAA preempts this action by implication.

Furthermore, the unpublished opinion of a New York trial court, Tormey v. The American Tobacco Co., No. 05-0506, slip op., (N.Y. Sup. Ct. Sept. 20, 2006), is not persuasive in this matter. That court determined that preemption in that case turned on whether the claim was "based on smoking and health," presumably because that case involved cigarettes that were "labeled in conformity with the provisions of this Act."  It seems clear – and logical – that tobacco products which are not labeled do not enjoy the corollary immunity from state tort lawsuits.  Indeed, the purpose of "uniformity," which the preemption provision serves for labeled cigarettes, is neither promoted nor diminished by the absence of preemption when there is no uniform federal warning regulation to implement, as there is not for loose tobacco.  See 15 U.S.C. § 1331 (policy of FCLAA is to establish comprehensive cigarette labeling and advertising program to inform public of adverse health effects of cigarette smoking and protect commerce by preventing nonuniform cigarette labeling requirements).

that he began complaining of this exposure "in early 2001."
(Compl. at ¶ 11.)  Yet, he filed no Complaint until October 18,
2005.  Therefore, Bugler moves to dismiss the Complaint on
statute of limitations grounds, arguing that because New Jersey
imposes a two-year statute of limitations on personal injury
claims, N.J. Stat. Ann. § 2A:14-2, and because Plaintiff alleges
that his injuries began in December 2000, these claims are
untimely.

Plaintiff alleges that his smoke-related injuries caused him
to seek medical attention beginning in November 2004.
Plaintiff opposes the motion to dismiss for failure to comply
with the statute of limitations, arguing that although he has
known since December 11, 2000 that he was exposed to ETS, "he did
not discover he was injured by ETS until x-rays in December, 2004
or, of COPD in March 2005."  (Pl. Opp. to Bugler's Mot. to
Dismiss at 9.)  Plaintiff claims that the New Jersey discovery
rule tolls his action until December 2004 or March 2005, when he
first was able to - and did - learn of those injuries.

On the other hand, Bugler argues that the "discovery rule"
is inapplicable to this action because according to Plaintiff's
Complaint, since December 2000 he was aware of the existence and
the cause of his injuries.  Bugler argues that the rule only
tolls the limitation period "if a plaintiff was not - and
reasonably could not have been - aware of the underlying factual

14

basis for a cause of action."  (Bugler Br. at 15) (citing

<u>Martinez v. Cooper-Hospital-Univ. Med. Ctr.</u>, 163 N.J. 45, 52

(2000)).

This Court applies the New Jersey personal injury statute

of limitations to Plaintiff's claims against Bugler.  <u>See</u> <u>Van</u>

<u>Buskirk v. Carey Canadian Mines, Ltd.</u>, 760 F.2d 481, 487 (3d Cir.

1985).

> Although the statute of limitations governing
> actions for personal injury, N.J.S.A.
> 2A:14-1, requires that suit be started within
> two years after the cause of action shall
> have accrued, the legislature has not "sought
> to define or specify when a cause of action
> shall be deemed to have accrued * * *."
> <u>Fernandi v. Strully</u>, 35 N.J. 434, 449 (1961).
> That determination has been left to judicial
> interpretation . . . .

<u>Vispisiano v. Ashland Chemical Co.</u>, 107 N.J. 416, 425 (1987).

In New Jersey "the 'discovery rule' [is] an equitable

principle that delays accrual of a cause of action 'until the

injured party discovers, or by an exercise of reasonable

diligence and intelligence should have discovered that he may

have a basis for an actionable claim.'"  <u>Lapka v. Porter Hayden</u>

<u>Co.</u>, 162 N.J. 545, 548 (2000) (quoting <u>Lopez v. Swyer</u>, 62 N.J.

267, 272 (1973)).  "The essential purpose of the rule is to avoid

harsh results that otherwise would flow from mechanical

application of a statute of limitations."  <u>Vispisiano</u>, 107 N.J.

at 426.

The "discovery rule" is called into play

> "when a party is either unaware that he has
> sustained an injury or, although aware that
> he has sustained an injury or, although aware
> that an injury has occurred, he does not know
> that it is, or may be, attributable to the
> fault of another * * *."  <u>Tevis v. Tevis</u>, 79
> N.J. 422, 432 (1979). One's awareness of an
> injury or deleterious condition does not
> always equate with the accrual of a cause of
> action. At times . . . "the inquiry must
> focus upon fault as well as injury where the
> awareness of the fault is not self-evident in
> the injury." <u>Jarusewicz v. Johns-Manville
> Prods. Corp.</u>, [188 N.J. Super. 638, 643 (Law.
> Div. 1983)].

<u>Vispisiano</u>, 107 N.J. at 427.

The discovery rule does not apply in this case because according to the facts alleged in the Complaint, Plaintiff was consistently aware that he was being exposed to harmful ETS from Bugler tobacco and that this smoke was allegedly harming his health.  His awareness of harm, according to his Complaint, began in early 2001 at the latest.  The fact that specific medical impairments did not occur until later does not change that determination.

New Jersey's highest court has held that the discovery rule does not apply when an injured party knows of the existence and source – but not the extent – of his medical injury.  In <u>Lapka</u>, the New Jersey Supreme Court held that a claim by a petitioner in a worker's compensation case, allegedly injured by exposure to asbestos, accrued when he discovered or should have discovered that the asbestos to which he was exposed was harmful to him, not

when he finally received his asbestosis diagnosis.  162 N.J. at
555-56.

> Plaintiffs suggest that the discovery rule
> delays accrual of an action until a claimant
> acquires an exact medical diagnosis of an
> asserted condition.  We disagree. We impute
> discovery if the plaintiff is aware of facts
> that would alert a reasonable person to the
> possibility of an actionable claim; medical
> or legal certainty is not required.

Id.  Similarly, here, Plaintiff alleges that he has been exposed
to Bugler tobacco smoke since December 2000.  According to the
Complaint, his claim accrued at the latest in "early 2001" when
he allegedly complained of the ill-effects that smoke was having
on his ability to breathe.  (Compl. at ¶ 11.)  Thus, Lapka's
holding applies to this case and requires the Court to find that
the discovery rule did not toll the statute of limitations after
"early 2001" when, taking the Complaint on its face, Plaintiff
became aware that his exposure to Bugler's environmental tobacco
smoke was harming his cardiovascular health.

Thus, all claims against Defendant Bugler Tobacco, filed in
2005, are beyond the two-year statute of limitations and are
untimely.  The Court shall grant the motion to dismiss all claims
against Bugler, pursuant to Rule 12(b)(6), Fed. R. Civ. P.,
because such claims arising under New Jersey law are time-barred
and because Bugler is not a state actor for purposes of 42 U.S.C.
§ 1983 liability.

IV.  DEFENDANT MACFARLAND'S SUMMARY JUDGMENT MOTION

     A.   Summary Judgment Standard

     The Court shall construe Defendant MacFarland's motion as a
motion for summary judgment because both parties rely on matters
outside the pleadings, including affidavits and exhibits, which
are relevant to this Court's decision whether the case may
proceed.  See Fed. R. Civ. P. 12(b).  Summary judgment is only
appropriate when the materials of record "show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  Id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  Id.

     In deciding whether there is a disputed issue of material
fact, the Court must view the evidence in favor of the nonmoving
party by extending any reasonable favorable inference to that
party; in other words, "the nonmoving party's evidence 'is to be
believed, and all justifiable inferences are to be drawn in [that
party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999)
(quoting Anderson, 477 U.S. at 255).  The threshold inquiry is

whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

However, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as

> to any material fact,' since a complete
> failure of proof concerning an essential
> element of the nonmoving party's case
> necessarily renders all other facts
> immaterial.

Celotex, 477 U.S. at 323.

### B.   Background[11]

The following facts are undisputed.  In May 2001, South

Woods disseminated a non-smoking policy to all inmates and staff

members.  The policy permits smoking only in outdoor recreation

areas.  Notices of that policy are posted on bulletin boards in

each housing unit and in the library.  The policy was also

incorporated into the South Woods Inmate Handbook.  Inmates are

subject to disciplinary action if they violate the policy by

smoking or possessing tobacco products or matches where

prohibited.  From December 11, 2000 to June 28, 2006, South Woods

has issued inmates 176 disciplinary charges for smoking where

prohibited.[12]

---

[11]   The facts set forth here are those asserted in
MacFarland's Local Rule 56.1 statement of undisputed material
facts that Plaintiff admitted in his responsive statement of
facts and those supported by evidence Plaintiff submitted in
opposition to this motion.

[12]   Although Plaintiff's commissary records indicate that he
has been purchasing matches and Bugler tobacco, he claims that he
is a non-smoker and that he trades the tobacco for food from
kitchen workers.  Although it is ironic that Plaintiff complains
of smoke in the prison while contributing to the problem in this
way, viewing the facts in the light most favorable to Plaintiff,
as the Court must, the Court will assume for purposes of this
motion that Plaintiff does not smoke.

Because of its ban on indoor smoking, South Woods does not assign cell mates according to whether or not they smoke. Plaintiff's cell mate has smoked on occasion.  (See generally Tyler Cert.)  When he does so, prison officials remind him that smoking in the cell is prohibited and that subsequent violations shall be punished.  (Id.)

### C.   Parties' Arguments

Plaintiff argues that the non-smoking policy is ineffective and that, notwithstanding the policy, inmates smoke in their cells.  Plaintiff argues that because of the policy's ineffectiveness and his health problems, the prison should house him in a cell with an inmate who is a non-smoker.  Its failure to do so, he argues, violates his right to be free from cruel and unusual punishment under the Eighth Amendment and entitles him to monetary and other appropriate relief pursuant to 42 U.S.C. § 1983.

Defendant Kathryn MacFarland has moved for summary judgment on several grounds: (1) the statute of limitations bars Plaintiff's claims arising prior to October 18, 2003; (2) Plaintiff has failed to exhaust available administrative remedies; (3) she is not a proper defendant under 42 U.S.C. § 1983 and the Eleventh Amendment; (4) Plaintiff's Complaint improperly relies on a theory of respondeat superior; (5) Plaintiff cannot establish an Eighth Amendment claim for exposure

to ETS because South Woods is a smoke-free institution; and (6) qualified immunity bars Plaintiff's actions because Defendant MacFarland adhered to the holding in <u>Helling v. McKinney</u>, 509 U.S. 25 (1993).

**D.   Discussion**

    1.   <u>Statute of Limitations and Exhaustion</u>

The applicable statute of limitations for Plaintiff's Eighth Amendment claims against Defendant MacFarland is N.J. Stat. Ann. § 2A:14-2, which provided Plaintiff with two years from the date his claim accrued to file suit.  <u>Hardin v. Straub</u>, 490 U.S. 536, 539 (1989) (quoting <u>Bd. of Regents, Univ. of New York v. Tomanio</u>, 446 U.S. 478, 484 (1980)) ("Limitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'"); <u>Cito v. Bridgewater Twp. Police Dep't</u>, 892 F.2d 23, 25 (3d Cir. 1989). However, the Prison Litigation Reform Act required that Plaintiff first exhaust available prison remedies before proceeding against MacFarland.  42 U.S.C. § 1997(e)(a).  Thus, the statute of limitations inquiry is slightly different for this defendant than for Bugler, a private defendant, because this claim did not accrue at the time of the injury but rather after Plaintiff had an opportunity to exhaust his available prison remedies.

The Prison Litigation Reform Act ("PLRA") provides, in part:

        No action shall be brought with respect to
        prison conditions under section 1979 of the

> Revised Statutes of the United States (42
> U.S.C. 1983), or any other Federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997(e)(a).  The PLRA's exhaustion requirement

applies to all inmate suits "about prison life, whether they

involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong."  Porter v.

Nussle, 534 U.S. 516, 532 (2002).  Furthermore, exhaustion of all

administrative remedies is mandatory whether or not the inmate

believes such administrative remedies to be effective and even if

the available administrative processes cannot grant the desired

remedy.  Booth v. Churner, 532 U.S. 731, 739-41 (2001).

Moreover, in Concepcion v. Morton, the Third Circuit held that

the PLRA's exhaustion requirement applies to grievance procedures

set forth in a New Jersey Department of Correction's inmate

handbook and that these procedures are administrative remedies,

within the meaning of the statute.  Concepcion v. Morton, 306

F.3d 1347, 1355 (3d Cir. 2002) ("[A] remedy need not be formally

adopted through regulations by an agency in order for it to be

considered an 'administrative remedy' within the scope of §

1997e(a)'s exhaustion requirement.  Thus . . . plaintiffs must

first attempt to address their grievances through the

administrative remedy described in New Jersey's Department of

23

Corrections Inmate Handbook before they will be allowed to pursue their § 1983 claims.").

The parties agree that Plaintiff exhausted those remedies as to his complaints about ETS and hot water, but not as to his former complaints about the lack of heat in the prison. It appears, however, that Plaintiff has abandoned any claims as to the lack of heat or hot water in the prison. Therefore, pursuant to <u>Jones v. Bock</u>, 509 U.S. __ , 127 S. Ct. 910 (2007), decided since the parties briefed this motion, the Court shall reject the failure-to-exhaust challenge to Plaintiff's claims about smoking, which he concededly exhausted. Because <u>Jones</u> held that exhausted claims can go forward independent of non-exhausted claims, 127 S. Ct. at 923-26, it is irrelevant whether Plaintiff exhausted other claims that were originally asserted in the Complaint.

However, given that Plaintiff exhausted the available remedies as to his ETS claim and that he has undoubtably filed this case more than two years since his exposure to ETS at South Woods began, the question remains whether his pursuit of administrative remedies precludes summary judgment against him on the ETS claims because the statute of limitations should be tolled while Plaintiff sought internal relief for his complaints. The Court hereby holds that because the general requirements for equitable tolling appear to be met, Plaintiff's claims against Defendant MacFarland were timely, even though filed more than two

years after Plaintiff's exposure to ETS began.

As noted above, Plaintiff pursued his mandatory administrative remedies.  Defendant makes no argument that Plaintiff was dilatory in seeking this internal relief.  Nor does Defendant argue that more than two years have elapsed since Plaintiff exhausted his claims as to tobacco smoke.  Although there appears to be no Third Circuit case directly on point, the Court finds the decisions of other Circuits, holding that tolling must apply while prisoners exhaust internal remedies, to be logical and persuasive:

> We do not regard the intersection of the exhaustion and statute of limitations requirements as creating a problem for prisoners, however, as we agree with the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process.  See Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir.2001) ( "We thus hold that in the ordinary case, a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process." ); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir.2000) (tolling is appropriate while prisoner completes mandatory exhaustion); Harris v. Hegmann, 198 F.3d 153, 157-59 (5th Cir.1999) (same).

Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005).  See also Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470-71 (3d Cir. 2001) (statute of limitations does not begin to run on Title VII claim until complainant exhausts administrative

remedies and can bring suit).

Furthermore, New Jersey's tolling rules apparently contemplate that its statute of limitations will not run while an individual pursues statutorily-mandated exhaustion.  See W.V. Pangborne & Co., Inc. v. New Jersey Dept. of Transp., 116 N.J. 543, 556-57, 562 A.2d 222, 228-29 (1989) (quoting Nix v. Spector Freight Sys., Inc., 62 N.J. Super. 213, 223, 162 A.2d 590 (App. Div. 1960)) ("'The general rule is that in order that the pendency of other proceedings shall have the effect of tolling the statute of limitations on a cause of action, the proceedings must be such as to prevent enforcement of the remedy by action.'"); see also Galligan v. Westfield Centre Svc., Inc., 82 N.J. 188, 193, 412 A.2d 122, 124 (1980) ("Whenever dismissal would not further the Legislature's objectives in prescribing the limitation, the plaintiff should be given an opportunity to assert his claim.").  To the extent tolling involves considerations of equity and fairness, the Court notes that it would be inequitable not to toll the statute of limitations while Plaintiff was statutorily banned from filing this action. Additionally, the Court holds that, absent any showing that a plaintiff is dilatory in exhausting mandated remedies, accrual can not occur until that plaintiff is statutorily permitted to sue.  The clock does not start until after Plaintiff exhausted those mandatory avenues of relief.  Although the date of

Plaintiff's exhaustion is not clear to the Court, on this motion for summary judgment Defendant has presented no evidence and no claim that more than two years have elapsed since Plaintiff exhausted his administrative remedies.

Accordingly, because the PLRA required Plaintiff to exhaust his available administrative remedies before pursuing this action against Defendant MacFarland, and because there is no claim that he failed to do that in a timely manner or to pursue this action in a timely manner once he exhausted his internal remedies, the Court shall deny MacFarland's motion for summary judgment insofar as she alleges Plaintiff has failed to comply with the applicable New Jersey statute of limitations.

> 2.   Whether Plaintiff's Conditions of Confinement are Cruel and Unusual

Nevertheless, the Court shall grant Defendant MacFarland's motion for summary judgment because there is no genuine issue as to her alleged "deliberate indifference."  Defendant MacFarland argues that she is entitled to summary judgment because Plaintiff's conditions of confinement at South Woods did not constitute violation of the Eighth Amendment, as he alleges. Because Plaintiff is claiming both that he has already sustained injuries and that he is at risk of future harm, the Court must analyze the record according to the standards set forth in Estelle v. Gamble, 429 U.S. 97 (1976) (deliberate indifference to serious medical needs of prisoners violates Eighth Amendment) and

in <u>Helling v. McKinney</u>, 509 U.S. 25 (1993) (Eighth Amendment protects against risk of future harm).  The Court must, however, keep in mind that on this motion for summary judgment, it must view the facts in the light most favorable to Plaintiff and determine whether there is a genuine issue of material fact.  <u>See</u> <u>Atkinson v. Taylor</u>, 316 F.3d 257, 262-69 (3d Cir. 2003) (undertaking both inquiries in rejecting claim of qualified immunity in prisoner's ETS case).

However, both claims (prior injury and risk of future harm) require Plaintiff to show that Defendant MacFarland was deliberately indifferent.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  Further, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."  <u>Id.</u> at 845.  Plaintiff has failed to bring forward any evidence that would permit a jury to find deliberate indifference.

According to both parties, Defendant MacFarland, Administrator of South Woods, has adopted, posted and enforced the prison's non-smoking policy.  Plaintiff merely indicates that

28

the prisoners resist the enforcement and that the policy is less effective than placing him in cells with non-smokers would be. Further, on evidence from both parties, it is clear that prison officials affirmatively enforce the policy by, among other things, responding to Plaintiff's complaints that his cell mate smoked in the cell.  (Tyson Cert. at ¶ 8.)   There is no indication that Defendant MacFarland was deliberately indifferent to the risks associated with ETS; by banning smoking indoors, disciplining those who violate the rule, and responding to Plaintiff's complaints about his cell mate, Defendant has acted reasonably, taking into account Plaintiff's current and future medical needs.  No reasonable fact-finder could conclude from the evidence most favorable to Plaintiff that MacFarland has been deliberately indifferent to his medical condition and needs. Therefore, the Court shall grant summary judgment to Defendant MacFarland on Plaintiff's claims against her.

## V.    CONCLUSION

For the foregoing reasons, the Court shall grant Defendant Bugler's Motion to Dismiss and grant Defendant MacFarland's Motion for Summary Judgment, and shall dismiss these parties from this action.  An accompanying Order shall be entered.


**March 7, 2007**                                **s/ Jerome B. Simandle**
Date                                             Jerome B. Simandle
                                                 U.S. District Judge